IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

IN RE:
BLACKJEWEL, L.L.C.,
BLACKJEWEL HOLDINGS L.L.C.,
REVELATION ENERGY HOLDINGS, LLC,
REVELATION MANAGEMENT CORP.,
REVELATION ENERGY, LLC,
DOMINION COAL CORPORATION,
HAROLD KEENE COAL CO. LLC,
VANSANT COAL CORPORATION,
LONE MOUNTAIN PROCESSING, LLC,
POWELL MOUNTAIN ENERGY LLC,
CUMBERLAND RIVER COAL LLC,

                Debtor-in-Possess.

FIFTH THIRD BANK,

                Appellant,

v.                                          CIVIL ACTION NO.  3:19-00663
                                          BANKRUPTCY NO.   19-30289

BLACKJEWEL, L.L.C.,
BLACKJEWEL HOLDINGS L.L.C.,
REVELATION ENERGY HOLDINGS, LLC,
REVELATION MANAGEMENT CORP.,
REVELATION ENERGY, LLC,
DOMINION COAL CORPORATION,
HAROLD KEENE COAL CO. LLC,
VANSANT COAL CORPORATION,
LONE MOUNTAIN PROCESSING, LLC,
POWELL MOUNTAIN ENERGY LL,
CUMBERLAND RIVER COAL LLC,

                Appellees.

# MEMORANDUM OPINION AND ORDER

Presently pending and ripe for resolution is a Motion to Dismiss this appeal from the United States Bankruptcy Court for the Southern District of West Virginia, filed by Contura Energy, Inc. ("Contura"). *Mot. to Dismiss*, ECF No. 16. Appellant Fifth Third Bank ("Fifth Third") timely filed a Response in Opposition, *Resp. in Opp'n*, ECF No. 19, and Contura did the same with its Reply, *Reply. Mem.*, ECF No. 20. The issues have been fully and capably briefed by both parties. For the reasons set forth below, the Court **GRANTS** the motion and **DISMISSES AS MOOT** this action from its docket.

## I. BACKGROUND

While the bankruptcy proceedings that form the background of this appeal are complicated, the issues presented to this Court for review are not. On July 1, 2019, Blackjewel, L.L.C. and its affiliated debtors (collectively "Debtors") filed for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq*. *Mem. in Support of Mot. to Dismiss*, ECF No 17, at 2. Proceedings in front of Judge Volk moved swiftly, and Contura placed successful bids for two sets of the Debtors' assets—the "Western Assets" and "Pax Assets"—before the end of July. *Id.* at 3. The two groups of assets were originally part of a simultaneous closing process, the terms of which were summarized in a Term Sheet contained Contura's sale motion. *Id.* at 2. The Term Sheet included a broad proposed release clause:

> The Sale Order will provide for customary releases by the Seller Parties of any claims or causes of action against Contura, and the representatives, professionals and other advisors thereof, including but not limited to release of any and all claims, obligations, suits, judgments, damages, rights, causes of action and liabilities of any nature whatsoever (including, without limitation, those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, matured or unmatured, existing or thereafter arising, in law, equity, or otherwise against the Purchased Assets and Contura and their respective affiliates. In addition, if Sellers file a chapter 11 plan, such plan will include releases and exculpation provisions in favor of Contura and the representatives, professionals and other advisors thereof

to the maximum extent permitted by law. For the avoidance of doubt, Contura and the Highbridge/Whitebox DIP Lenders shall not waive, and shall expressly reserve, all claims against the Seller Parties and the Debtors' estates, whether arising under contract, by law, in equity or otherwise.

*Term Sheet*, ECF No. 4-1, at 50. Fifth Third objected to the clause, arguing that such releases were "improper, unwarranted, and contrary to law." *Objection*, ECF No. 4-6, at ¶ 9. On August 6, 2019, Judge Volk overruled the objection based on the "remote periods of time that are involved here" and "the speculative nature of the assertion of these claims." *Hr'g Tr.*, ECF No. 4-15, at 145–46.

This process of proposing a broad release, objecting to the broad release, and overruling the objection to the broad release would reoccur over the course of August. As the sale of the Western Assets was conditioned on approval by certain government regulators, the sale of the Western and Pax Assets was bifurcated to permit the prompt acquisition of the Pax Assets by Contura. *Id.* at 4. The Debtors and Contura conducted negotiations and reached an agreement regarding the sale of the Pax Assets, which they memorialized in the Pax Asset Purchase Agreement ("Pax APA"). *Id.* at 5. Section 8.8 of the agreement contained a release clause providing that the Debtors would

> irrevocably and absolutely release[] and forever discharge[] Purchaser and its Affiliates and its and their respective successors and assigns and all officers, directors, partners, members, shareholders, employees, representatives, professionals and other advisors of each of them (the "Contura Released Parties") from any and all claims, interests, obligations, rights, liabilities, actions, causes of action, choses in action, suits, debts, demands, damages, expenses and/or losses of whatever kind or nature (including attorneys' fees and costs), dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, proceedings agreements, promises, variances, trespasses, judgments, remedies, rights of setoff, third party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims whatsoever, whether for tort, fraud, contract, violations of federal or state securities laws, including, to the extent legally permissible, any derivative claims asserted on behalf of the Seller, or otherwise, and whether actual or potential, known or unknown, foreseen or unforeseen, suspected or unsuspected, liquidated or unliquidated, now existing or hereafter arising, in law, equity, or otherwise, that such Person had, has, or may have in the future legal entitlement to assert in its own

right, or on behalf of the holder of any claim or equity interest (whether individually or collectively) or other entity, in any case of the foregoing, based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence or circumstances in any way related to the Retained Assets or the Retained Liabilities, or otherwise existing or taking place at any time on or before the Closing arising out of or in any way related to the Seller, the Seller's Subsidiaries (if any), the Seller's bankruptcy estates, the Bankruptcy Cases or the bankruptcy estates and bankruptcy cases, if any, of any of the Seller's Subsidiaries (as applicable).

*Pax APA*, ECF No. 4-9, at 113.

On August 22, 2019, the Debtors filed a motion for approval of the sale of the Pax Assets. *Mem. in Support of Mot. to Dismiss*, at 5. On August 27, 2019, Fifth Third objected to the release provision and argued that "the extremely broad 'Seller Releases' proposed to be granted by Debtors to Contura at paragraph HH of the Proposed Pax Sale Order and Section 8.8 of the Proposed Pax APA are improper, unwarranted, and contrary to law." *Objection and Resp. to Debtors' Mot. for Entry of Order Approving Sale*, ECF No. 4-10, at ¶ 13. On August 28, 2019, the bankruptcy court held a hearing and overruled Fifth Third's objection "based on the analysis given at the prior hearing." *Hr'g Tr.*, ECF No. 4-13, at 26.[1] The next day, Judge Volk entered an order approving the sale of the Pax Assets. *Mem. in Support of Mot. to Dismiss*, at 6. He made two important findings relevant to this appeal: first, that Contura was a "good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code" and was "therefore[] entitled to the protections of such provision," and second, that the "sale of the Purchased Assets pursuant to the Purchase Agreement, all covenants therein and conditions thereto, and all relief requested in the Motions *are an integrated transaction*, meaning that each component is an essential part of every

---

[1] While the Court need not delve into the reasoning behind Judge Volk's decision to overrule the objection, Contura alleges that he found doing so "appropriate under the circumstances" because the objection had been based on a "hypothetical claim." *Mem. in Support of Mot. to Dismiss*, at 6. As even a brief review of the transcript makes clear, Judge Volk made no such finding; these are counsel's words, not the court's. *Hr'g Tr.*, at 18.

other component and that the entire transaction can be consummated only if all of its components are consummated." *Order Approving Sale of Debtor's Purchased Assets*, ECF No. 4-12, at 13–15 (emphasis added).

No party sought to stay the order after its issuance. *Mem. in Support of Mot. to Dismiss*, at 7. Instead, Fifth Third filed its Notice of Appeal on September 12, 2019, arguing that that the bankruptcy court had wrongly approved the "Debtors' Releases of Purchaser" provision in the Pax APA. *Notice of Appeal*, ECF No. 1, at 1. This is the sole issue upon which Fifth Third has based its appeal. Notwithstanding these proceedings, the sale of the Pax Assets to Contura closed on September 18, 2019, *Mem. in Support of Mot. to Dismiss*, at 7, which Contura followed with the instant Motion to Dismiss on October 25, 2019, *Mot. to Dismiss*, at 1. It is to the arguments contained in this motion that the Court now turns.

## II. DISCUSSION

Contura bases its motion on two principal grounds: that Fifth Third's claims are statutorily moot under 11 U.S.C. § 363(m), and that they are equitably moot in the alternative. *See Mem. in Support of Mot. to Dismiss*, at ii. The Court agrees with Contura's first argument, so it need not address the second.

Statutory mootness is a creation of 11 U.S.C. § 363(m), which "codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved." *In re Rare Earth Minerals*, 445 F.3d 359, 363 (4th Cir. 2006). In pertinent part, Section 363(m) provides that

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and sale or lease were stayed pending appeal.

In plainer terms, "[w]here a sale of a bankrupt's assets has not been stayed, an appeal challenging the sale's validity is moot because 'the court has no remedy that it can fashion even if it would have determined the issues differently.'" *Id.* (quoting *Anheuser-Bush, Inc. v. Miller (In re Stadium Mgmt. Corp.)*, 895 F.2d 845, 847 (1st Cir. 1990)). Though perhaps harsh at first glance, this bar on appellate review serves important purposes: it shields purchasers from "endless rounds of litigation to determine who has what rights in [a] property," *In re Sax*, 796 F.2d 994, 998 (7th Cir. 1986), and "allows bidders to offer fair value for estate property," *In re Rare Earth Minerals*, 445 F.3d at 363. Moreover, the statute is relatively forgiving in practice; it "simply requires that the claimant request, and be granted, a stay of the sale pending [an] appeal." *Id.*

Here, it is undisputed that Contura is a "good faith buyer" of the Pax Assets. It is similarly clear that Fifth Third did not request—let alone obtain—a stay pending this appeal. In recognition of both these unfavorable facts, Fifth Third advances the argument that Section 363(m) does not bar appeals where an appellant seeks to modify a term that is not "crucial . . . to the sale occurring." *Resp. in Opp'n*, at 1. As a preliminary matter, the Court notes that the legal validity of this assertion is questionable at best. The few courts that have gestured at the possible existence of an exception for non-integral provisions of a sale agreement have hardly done so with any certainty, and the Court is not aware of any cases—cited by Fifth Third or otherwise—in which a court has actually reviewed a peripheral portion of a sale agreement to a good-faith buyer absent a stay. *See*, *e.g.*, *In re WestPoint Stevens*, *Inc.*, 600 F.3d 231, 249 (2d Cir. 2010) (reasoning that a "narrow exception [to Section 366(m)] *may* lie for challenges to [a] Sale Order that are so divorced from the overall transactions that the challenged provision would have affected *none* of the considerations on which the purchaser relied" (emphasis added)).

Of course, the Court need not resolve this legal question in order to resolve this case. Fifth Third points to a single piece of factual evidence in support of its argument that the release provision of the Pax APA is not integral to the rest of the agreement: a brief colloquy between Judge Volk and counsel for Contura wherein counsel remarked that "it's fairly commonplace for there to be releases in purchase agreements" and agreed that the releases had been included "simply due to the fact that Davis Polk thought it was customary . . . and perhaps it wasn't at [Contura's] urging at all." *Hr'g Tr.*, ECF No. 4-15, at 143–144. Fifth Third also points to a severability clause elsewhere in the Pax APA, arguing that its existence means that certain portions of the agreement are not integral to each other. *Resp. in Opp'n*, at 8. As an initial matter, the Court struggles to understand Fifth Third's reasoning. The fact that release provisions are "fairly commonplace" and "customary" in similar agreements does not suggest that they are not integral to those agreements—indeed, it suggests exactly the opposite. Customary contractual provisions often become customary *because* of their importance, not in spite of their importance. Fifth Third's argument with respect to the severability clause is likewise unpersuasive, as the mere existence of a severability clause does not suggest that courts have the freewheeling discretion to carve up contracts without consideration of a provision's centrality to the broader agreement it lies within. *See Dillon v. BMO Harris Bank, N.A.*, 856 F.3d 330, 336–37 (4th Cir. 2017) (concluding that unenforceable choice of law provisions were "essential to the purpose of" an arbitration agreement and therefore "not severable from the broader" agreement, despite existence of a severability clause).

Notwithstanding the insufficiency of these arguments, Fifth Third's appeal must inevitably fail for an even clearer reason: Judge Volk's explicit finding that the "sale of the Purchased Assets pursuant to the Purchase Agreement, all covenants therein and conditions thereto, and all relief

requested in the Motions *are an integrated transaction*, meaning that each component is an essential part of every other component and that the entire transaction can be consummated only if all of its components are consummated." *Order Approving Sale of Debtor's Purchased Assets*, at 15 (emphasis added). Fifth Third has not objected to this finding or provided any legal rationale for this Court to overturn it; indeed, it is left entirely unaddressed in its brief. As such, the Court has little trouble concluding that the challenged release provision is an integral part of the Pax Assets sale. It follows that appellate review of the bankruptcy court's order approving the sale is unavailable to Fifth Third, and its appeal must be dismissed.

### III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Contura's Motion to Dismiss, ECF No. 16, **DISMISSES AS MOOT** this appeal, and **ORDERS** that this case be removed from its docket. The Court further **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented parties.

ENTER: February 10, 2020

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE